THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *v.* THE POLLU-
TION CONTROL BOARD *et al.*, Appellees.

First District (2nd Division)   No. 82—2728

Opinion filed November 15, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Philip C. Parenti and
H. Alfred Ryan, Assistant Attorneys General, of counsel), for petitioner.

E. William Hutton and David L. Rieser, Special Assistant Attorneys
General, of Springfield, for respondent Illinois Environmental Protection
Agency.

Allen S. Lavin, of Chicago (James B. Murray and Phillip Rothenberg, of

counsel), for respondent Metropolitan Sanitary District of Chicago.

Michael J. Wilson, of Bloomington, for respondent Bloomington-Normal Sanitary District.

JUSTICE PERLIN delivered the opinion of the court:

The People of the State of Illinois have petitioned this court for review of a final administrative order of the Pollution Control Board (the Board) entered on October 14, 1982. The order repealed two of the Board's water pollution regulations setting water quality standards for the State's surface waters and relaxed the requirement for the discharge of sewage treatment plant effluents into the State's surface waters.[1] The People contend that the Board's repeal of the water quality standards for primary contact waters violated State and Federal law; that the Board's decision to modify the effluent disinfection requirements rests upon an arbitrarily chosen 20-mile limit; and that the Board's second notice of adoption of proposals submitted to the Board by the Illinois Environmental Protection Agency (the Agency) violated section 28 of the Illinois Environmental Protection Act. (Ill. Rev. Stat. 1981, ch. 111½, par. 1028.) For the reasons hereinafter stated, we affirm in part and reverse in part.

On October 14, 1982, the Illinois Pollution Control Board, over the dissent of its chairman, Jacob D. Dumell, entered a final order with respect to three regulatory proposals which the Illinois Environmental Protection Agency submitted to the Board in 1977.[2] The order deleted fecal coliform bacteria[3] as a water quality standard for general use waters (35 Ill. Admin. Code sec. 302.209) and secondary contact waters (35 Ill. Admin. Code sec. 302.406) and modified the requirements for disinfecting sewage treatment plant effluents prior to discharge into receiving bodies of water (35 Ill. Admin. Code sec. 304.121).

The Agency proposed deletion of the fecal coliform standard and modification of the effluent discharge requirement because it concluded that the disinfection process practiced in Illinois, chlorination, is harmful to the environment and that the fecal coliform standard

---

[1]We hasten to point out that this case does not involve the chlorination of potable water. We are aware of no proposals to change the current techniques for purifying our drinking water supplies.

[2]Under the Illinois Environmental Protection Act, the Agency has authority to propose rules and regulations to the Board which then conducts hearings and determines whether such proposals should be adopted.

[3]Fecal coliform bacteria are bacteria found in the waste materials of warm blooded animals.

does not indicate water quality but only the presence of fecal coliform bacteria.

The Board modified the effluent requirements so that no disinfection is required of sewage treatment plant discharges outside of the swimming season; disinfection of wastewaters is required only for those discharges whose effluent outfall to a waterway lay within 20 miles upstream of a public water supply, a food processing supply, a licensed bathing beach during the swimming season, or where such a discharge would violate the standard of another State's water. According to the Attorney General, more than 1600 of the approximately 1700 dischargers to the State's general use waters would not require disinfection at any time of the year.

The Board's order was to become effective upon its filing with the Secretary of State on November 6, 1982. The People of the State of Illinois filed a timely petition for review on November 16, 1982. On February 1, 1983, this court entered an order staying the regulatory change until further notice.

The text of the two sections of the water pollution rules and regulations deleted by the Board's order are as follows:

"Section 302.209 Fecal Coliform
Based on a minimum of five samples taken over not more than a thirty day period, fecal coliform *** shall not exceed a geometric mean of 200 per 100 ml, nor shall more than 10% of the samples during any thirty day period exceed 400 per 100 ml." 35 Ill. Admin. Code sec. 302.209.

"Section 302.406 Fecal Coliform
Based on a minimum of five samples taken over not more than a thirty day period, fecal coliforms *** shall not exceed a geometric mean of 1,000 per 100 ml, nor shall more than 10% of the samples during any thirty day period exceed 2,000 per 100 ml." 35 Ill. Admin. Code sec. 302.406.

Former section 304.121 provides that "[n]o effluent governed by this Part shall exceed 400 fecal coliform per 100 ml." (35 Ill. Admin. Code sec. 304.121.) The text of the revised section is as follows:

"No person shall cause or allow fecal coliform *** to exceed 400 per ml in any effluent which discharges to the following locations:

a) During the months of May through September, within 20 stream miles (statute miles) upstream of a public bathing beach licensed under the 'Illinois Swimming Pool and Bathing Beach Act' (Ill. Rev. Stat. 1979, ch. 111½, pars. 1201-1227);

b) Within 20 stream miles (statute miles) upstream of a water intake used for public or food processing water supply;

c) Any location where it may cause or contribute to violation of another state's water quality standards in interstate waters." 35 Ill. Admin. Code sec. 304.121.

I

■ The Attorney General's initial argument is that the deletion of the fecal coliform standard is violative of Federal and State environmental law.

Both Federal and State law require the Board to designate uses for various waters and to prescribe water quality standards to protect those uses. (33 U.S.C. sec. 1313(c)(2) (1976); 40 C.F.R. sec. 35.1550(b) (1982); Ill. Rev. Stat. 1981, ch. 111½, par. 1011(b); 35 Ill. Admin. Code sec. 301.102; *Mississippi Commission on Natural Resources v. Costle* (5th Cir. 1980), 625 F.2d 1269, 1271-72, 1275-77.) With certain exceptions, the Board has designated all waters of the State as "general use waters" which must meet the general use standards of the Board's water pollution regulations. (35 Ill. Admin. Code secs. 302.101(a), (b), 302.201, 303.200, 303.201.) The purpose of these standards is to "protect the State's water for aquatic life, agricultural use, primary and secondary contact use and most industrial uses and ensure the aesthetic quality of the State's aquatic environment." (35 Ill. Admin. Code sec. 302.202.) The Board's rules define "primary contact" as "[a]ny recreational or other water use in which there is prolonged and intimate contact with the water involving considerable risk of ingesting water in quantities sufficient to pose a significant health hazard, such as swimming and water skiing." 35 Ill. Admin. Code sec. 301.355.

The Board's order of October 14, 1982, repealed the fecal coliform indicator for general use waters (35 Ill. Admin. Code sec. 302.209), which include all primary contact waters in Illinois except Lake Michigan. (35 Ill. Admin. Code secs. 302.101(e), 302.501 through 302.509, 303.443.) The fecal coliform indicator for Lake Michigan (35 Ill. Admin. Code sec. 302.505) was not affected. In our judgment, the Board, in repealing the fecal coliform indicator for general use waters and in not replacing that indicator with another microbiological indicator, has contravened the regulatory scheme mandated by Federal and State law.

As we have noted, the Board is required to designate uses for various waters *and* to prescribe water quality standards to protect those uses. Except for those waters into which the Metropolitan Sani-

tary District discharges its effluents (35 Ill. Admin. Code sec. 303.441), all waters of the State are designated as general use waters. This use includes "primary contact" in which there is "prolonged and intimate contact with the water involving considerable risk of ingesting water in quantities sufficient to pose a significant health hazard ***." (35 Ill. Admin. Code sec. 301.355.) By virtue of its repeal of section 302.209, the Board has eliminated the water quality standard designed to avoid that health hazard for all general use waters except Lake Michigan. While the Board has taken the position that fecal coliform is not a reliable indicator of the presence of pathogens in water, this position, in our opinion, logically cannot be reconciled with the Board's retention of fecal coliform as a water quality standard for Lake Michigan (35 Ill. Admin. Code sec. 302.505), as a general effluent standard (35 Ill. Admin. Code sec. 304.121) and as a raw water quality standard for public water supplies (Illinois Pollution Control Board Rules and Regulations, ch. 6: Public Water Supplies, R. 307C). Moreover, the Board has not replaced that indicator with any other microbiological indicator to protect the uses designated for general use waters. We believe this action exceeded the Board's authority.

In *A.E. Staley Manufacturing Co. v. Environmental Protection Agency* (1972), 8 Ill. App. 3d 1018, 290 N.E.2d 892, the court stated:

> "[A]dministrative agencies are limited to the powers vested in them by statute and their rules and regulations are valid only when they are in the furtherance of the intention of the legislature as stated within the four corners of the statute. [Citation.] A rule or regulation to be valid may only implement the law, and regulations are valid only as subordinate rules and when found to be within the framework of the policy which the legislature has sufficiently defined. They are valid and binding only when they are in the furtherance of the intention of the legislature as evidence by its Act. [Citation.]" (8 Ill. App. 3d 1018, 1022-23.)

Rules for which the Board lacks statutory authority to promulgate are void. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 553, 387 N.E.2d 258.) In our judgment, therefore, that portion of the Board's order which repealed section 302.209, the fecal coliform water quality standard for general use waters, is void because it violates the legal requirement that the Board prescribe water quality standards to protect designated uses.

In its final order, the Board also repealed section 302.406, the fecal coliform water quality standard for secondary contact and indigenous aquatic life waters. The repeal of this section presents some-

what different questions than the repeal of section 302.209.

Waters designated as "secondary contact and indigenous aquatic life waters" are not required to meet the water quality standards for general use waters. (35 Ill. Admin. Code secs. 302.101(d), 302.401, 302.402, 303.200, 303.204.) The standards for secondary contact and indigenous aquatic life waters are "intended for those waters not suited for general use activities but which will be appropriate for all secondary contact uses and which will be capable of supporting an indigenous aquatic life ***." (35 Ill. Admin. Code sec. 302.402.) "Secondary contact" is defined as "[a]ny recreational or other water use in which contact with the water is either incidental or accidental and in which the probability of ingesting appreciable quantities of water is minimal, such as fishing, commercial and recreational boating and any limited contact incident to shoreline activity." (35 Ill. Admin. Code sec. 301.380.) "Acquatic life" is defined as "[n]ative populations of fish and other aquatic life." 35 Ill. Admin. Code sec. 301.220.

The only waters in Illinois designated by the Board as "secondary contact and indigenous aquatic life waters" are those waters into which the Metropolitan Sanitary District discharges its effluents. (35 Ill. Admin. Code sec. 303.441.) The Attorney General does not dispute this designation. In secondary contact waters, "contact with the water is either incidental or accidental and *** the probability of ingesting appreciable quantities of water is minimal ***." (35 Ill. Admin. Code sec. 301.380.) The Attorney General has not argued and we find no evidence in this record that the deletion of fecal coliform as a water quality standard for secondary use will affect the purposes for which secondary waters are used. Consequently we find no error in that portion of the Board's order which repealed section 302.406, the fecal coliform indicator for secondary contact and indigenous aquatic life waters. As a result of this conclusion, disinfection of fecal coliform bacteria will no longer be required of secondary contact and indigenous aquatic life waters.

## II

■ The Attorney General next contends that the order of the Board modifying the effluent disinfection requirement relies on an arbitrarily chosen 20-mile limit. The new rules state:

"No person shall cause or allow fecal coliform *** to exceed 400 per 100 ml in any effluent which discharges to the following locations:

a) During the months of May through September, within 20 stream miles (statute miles) upstream of a public bathing

beach licensed [by the Illinois Department of Health] under the 'Illinois Swimming Pool and Bathing Beach Act' (Ill. Rev. Stat. 1979, ch. 111½, pars. 1201-1227);

b) Within 20 stream miles (statute miles) upstream of a water intake used for public or food processing water supply;

c) Any location where it may cause or contribute to violation of another state's water quality standards in interstate water." (35 Ill. Admin. Code sec. 304-121.[4]

Voluminous expert testimony would appear to establish that a single, statewide uniform mileage criterion for disinfection of sewage effluents has no technical justification. The rule modifying the effluent standard adopted by the Board fails to take into account individual stream characteristics. Thus, in some instances, a 20-mile limit would provide more protection against downstream contamination than is necessary while in other instances, a 20-mile limit would be inadequate. Even those witnesses who supported a modification of the existing effluent standard agreed that a uniform rule of 20 miles is unsound. Moreover, in oral argument, counsel for the Board admitted that there is very little rational or scientific merit for the 20-mile limit. This limit, according to the Board, merely represents an accommodation among alternative distances.

The majority of expert witnesses, as well as the Board's chairman, Jacob D. Dumell, who dissented from the Board's order modifying the effluent standard, indicated that the decision to modify the effluent standard should be made on a case-by-case basis. This would not require, as the Board's opinion suggests, 1,500 separate site specific rulemaking proceedings. Instead, the effluent standard could be maintained, and the Agency could allow individual dischargers to omit or reduce disinfection where appropriate.

One of the difficulties with the Board's order modifying the effluent standard is that it does not protect the many recreational areas in Illinois which do not happen to be licensed by the Illinois Department of Health. The effect of the Board's rule is to shift responsibility for protecting waters used for recreational purposes to the Department of Health. This, in our opinion, is improper.

The Board's order modifying the effluent standard was apparently based on its concern that the disinfection method presently used in Illinois, chlorination, is harmful to the environment. The Board, however, was presented with alternative disinfection technologies (*e.g.*, ul-

---

[4]The former rule provided that "[n]o effluent governed by this Part shall exceed 400 fecal coliform per 100 ml." 35 Ill. Admin. Code sec. 304.121.

traviolet treatment) which were demonstrated to be workable, economically feasible and adaptable to existing Illinois treatment plants. The Board's stated objective of reducing Illinois' dependence on chlorine as a disinfectant for effluents could have been attained without relaxing the effluent standard. We conclude, therefore, that the modification of section 304.121 was arbitrary and unreasonable.

For the foregoing reasons, we reverse that portion of the Board's order deleting fecal coliform as a water quality standard for general use waters (35 Ill. Admin. Code sec. 302.209) and modifying the requirements for disinfecting sewage treatment plant effluents prior to discharge into receiving bodies of water (35 Ill. Admin. Code sec. 304.121). We affirm that portion of the Board's order which deleted fecal coliform as a water quality standard for secondary contact and indigenous aquatic life waters (35 Ill. Admin. Code sec. 302.406). In light of this disposition we need not address the Attorney General's remaining contention.

Affirmed in part and reversed in part.

DOWNING, P.J., and STAMOS, J., concur.